UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RENE GEOVANY ALFARO,<br><br>    Plaintiff<br><br>v.<br><br>BENJAMIN ESTILE, et al.,<br><br>    Defendants | Case No.: 2:24-cv-00929-APG-NJK<br><br>**Screening Order for First Amended Complaint**<br><br>[ECF No. 9] |

Rene Geovany Alfaro, who is in the custody of the Nevada Department of Corrections (NDOC), filed a first amended complaint (FAC) under 42 U.S.C. § 1983 and an application to proceed in forma pauperis. ECF Nos. 4, 9. I now screen the FAC and address the application to proceed in forma pauperis.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

All or part of a complaint filed by an incarcerated person may therefore be dismissed sua sponte if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF FAC

Alfaro sues several defendants for events that took place while he was incarcerated at High Desert State Prison (HDSP). ECF No. 1-1. He sues Sergeant (Sgt.) Benjamin Estile, Senior Corrections Officer (CO) K. Hunter, CO Richard Linford, Associate Warden (AW) Bean, CO Spry, CO Rkozloff, and CO Elima. Alfaro brings a single due process claim, requesting monetary damages, "stat time," and the return of restitution. Alfaro alleges as follows.

Alfaro had a culinary job at HDSP. On November 27, 2019, he was fired from this job and "level reduced from One to Two" because CO Hunter and Sgt. Estile falsely charged him

with stealing tuna.  As a result of the level reduction, Alfaro lost the opportunity to obtain "work time credits" and "stat time credits."

On January 4, 2020, Sgt. Linford held a disciplinary hearing with a committee of himself, AW Bean, and CO Spry.  At the hearing, Alfaro explained that he was not at work on the day of the supposed theft, and that the kitchen count logs for that day would confirm as much.  The committee nonetheless found Alfaro guilty based on a "call out sheet" that was not introduced during the hearing.  The sanctions for this guilty finding included restitution and the continued lost opportunity for obtaining work and stat time credits.  Alfaro's lack of involvement in programming also adversely affected his parole prospects.

Alfaro appealed, continuing to argue that he was not at work on the day of the supposed theft, and that the call out sheet relied on for his finding of guilt was not introduced before or during the disciplinary hearing.  CO Rkozloff and CO Elima upheld the conviction, citing the call out sheet, computer-based employment logs, and CO Hunter's statement that Alfaro admitted to stealing the tuna.  Alfaro appealed again, and non-defendants Brian Williams and Smith overturned the conviction after reviewing the count logs and finding that Alfaro did not work at culinary on the day of the supposed theft.

To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must establish the deprivation of a liberty or property interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  When analyzing a due process claim, courts engage in a two-step analysis: (1) "determine whether the inmate was deprived of a constitutionally protected liberty or property interest," and (2) "examine whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (citing *United States v. 101 Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2022)).  "An interest in avoiding certain

conditions of confinement constitutes a liberty interest protected by the Due Process Clause if the challenged condition imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (citations and quotation marks omitted). "[T]here is no single standard for determining when circumstances are atypical and significant," but the Ninth Circuit has "detailed three guiding considerations: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.* (citations and quotation marks omitted).

Alfaro alleges that, as a result of his disciplinary proceedings, he lost his prison job, he lost opportunities to obtain work and stat credits, and his parole prospects were harmed. These circumstances do not give rise to constitutionally protected liberty interests as a matter of law. *See Galanti v. Nev. Dep't of Corr.*, 65 F.4th 1152, 1156–57 (9th Cir. 2023) (citing *Moor v. Palmer*, 603 F.3d 658, 661–62 (9th Cir. 2010) ("Nevada prisoners do not have a liberty interest in parole.")); *Johnson*, 55 F.4th at 1194–95 (holding that prisoners do not have a liberty interest in participating in programs that make them eligible for good-time credit and parole); *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (citations and quotation marks omitted) ("[T]he Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment[.]"); *Collins v. Palczewski*, 841 F. Supp. 333, 336, 340 (D. Nev. 1993) (finding that neither the U.S. Constitution, Nevada statutory law, nor the state's prison administrative regulations create a protected interest in prison employment).

But Alfaro also alleges that one of the sanctions for his disciplinary conviction was restitution. And it is reasonable to infer that restitution may have resulted in the deduction of funds from Alfaro's inmate trust account. Prisoners have a protected property interest in the funds held in their prison accounts. *See Vance v. Barrett*, 345 F.3d 1083, 1089 n.6 (9th Cir. 2003). So, Alfaro was entitled to certain procedural safeguards in his disciplinary proceedings, including an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). The right "to present evidence in his defense means that the inmate 'must also have the right to access evidence that he might use in preparing or presenting his defense.'" *Ashker*, 81 F.4th at 878 (quoting *Melnik v. Dzurenda*, 14 F.4th 981, 986 (9th Cir. 2021)). "To be clear, a prisoner's right to access and prepare evidence for a disciplinary hearing is not unlimited nor unfettered. It may be limited by prison officials if they have a 'legitimate penological reason.'" *Melnik*, 14 F.4th at 986 (quoting *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992)). But "[p]rison officials may be required to provide an explanation" of that reason "when they deny a prisoner access to evidence, either in the administrative record or through testimony in court if the denial is challenged." *Id.*

Here, Alfaro alleges that his disciplinary hearing committee relied on a call out sheet for their finding of guilt, but they did not allow Alfaro to access this evidence before or during the hearing. And from the face of the FAC, it is not apparent that prison officials offered a legitimate penological reason for restricting Alfaro's access to this evidence.

Even so, I find that Alfaro fails to state a colorable due process claim because any procedural error committed by the disciplinary hearing committee was cured by Alfaro's successful appeal. The Ninth Circuit has held that procedural errors in prison disciplinary

6

proceedings may be "corrected through the administrative appeal process." *See Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (collecting cases).  I note that, when Williams reversed Alfaro's finding of guilt, he expressly ordered that "any restitution charged for this incident will be refunded." ECF No. 8 at 18 (Inmate Grievance Report dated 10/10/2020).  That "administrative appeal is considered part of the process afforded, and any error in the process can be corrected during that appeals process without necessarily subjecting prison officials to liability for procedural violations at lower levels." *See Frank*, 808 F.3d at 764 n.4 (quoting *Torricellas v. Poole*, 954 F. Supp. 1405, 1414 (C.D. Cal. 1997)).  So I dismiss Alfaro's due process claim without leave to amend, as this claim fails as a matter of law.

    I recognize that as part of the remedy in this case, Alfaro requests the return of restitution.  This may be construed as an allegation that any funds deducted from Alfaro's account as a result of his disciplinary conviction for theft have not actually been returned to him.  Accepting this allegation as true, Alfaro's concern is understandable, but it does not change the conclusion that he has not stated a colorable due process claim in this case.  If Alfaro has not received funds that are due to him as a result of his disciplinary conviction being overturned, that would be an unauthorized deprivation of Alfaro's property for which a meaningful post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that inmates cannot bring due process claims for unauthorized deprivation of property where there is a meaningful post-deprivation remedy available).  That remedy is a state-court tort action that follows the procedures established for an NDOC prisoner to recover compensation based on an NDOC employee's loss or damage of property. *See* NRS § 41.031 (waiving sovereign immunity from liability and consenting to suit in state court for tort actions); *id.* § 41.0322 (setting forth guidelines for actions by persons in NDOC custody to recover compensation for loss or injury).

I take no position on the procedural or substantive viability of any such tort action Alfaro may bring in state court.

### III.   CONCLUSION

I THEREFORE ORDER that the operative complaint is the FAC (ECF No. 9).

I FURTHER ORDER that this action is dismissed without.

I FURTHER ORDER that Alfaro's application to proceed in forma pauperis **(ECF No. 4) is granted**.  Alfaro is not required to pay an initial installment fee, but the full $350 filing fee will still be paid in installments under 28 U.S.C. § 1915.

I FURTHER ORDER that, under 28 U.S.C. § 1915, the Nevada Department of Corrections will forward payments from the account of Rene Geovany Alfaro, #1215223 to the Clerk of the United States District Court, District of Nevada, at a rate of 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action.  The Clerk of Court is kindly requested to send a copy of this order to the Finance Division of the Clerk's Office and to the Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov.

I FURTHER ORDER that any appeal from this order would not be taken in good faith under 28 U.S.C. § 1915(a)(3), so in forma pauperis status should not continue on any appeal.

I FURTHER ORDER that the Clerk of Court is kindly requested to close this case and enter judgment accordingly.

Dated: April 30, 2025

_____
Andrew P. Gordon
Chief United States District Judge